9452

SOUTHERN RY. CO. v. WILMONT OIL MILLS.

SAME v. BROADWAY COTTON OIL CO.

(89 S. E. 476.)

CARRIERS—INTERSTATE COMMERCE ACT—SCHEDULES OF RATES—POSTING.—
Under the Interstate Commerce Act Feb. 4, 1887, c. 104, sec. 6, 24 Stat. 380 (U. S. Comp. St. 1913, sec. 8569), where a railroad filed

proper schedules of rates with the secretary of the Interstate Commerce Commission, filed a copy of the schedules in its division freight office, and tacked a tin sign in a conspicuous place at stations, giving notice that freight schedules applying from each station were on file in the division freight office, such schedules were legal though not posted in the office from which shipments were made.

Before SEASE, J., Anderson, June, 1915.   Affirmed.

Suits by the Southern Railway Company against the Wilmont Oil Mills and against the Broadway Cotton Oil Company respectively.   From a judgment for plaintiff, defendants appeal.

· *Messrs. Watkins & Prince,* for appellants, submit: *It must be shown that the rates were printed, published and promulgated as well as filed with the interstate commission:* 223 U. S. 573 and 599; 226 U. S. 441; 100 S. C. 469.

*Messrs. Bonham, Watkins & Allen,* for respondents, cite: 202 U. S. 242; 204 U. S. 426; 226 U. S. 290; 223 U. S. 594; 227 U. S. 639; 95 S. C. 427; 100 S. C. 469; 101 S. C. 11.

July 7, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellants make this clear statement of their case:

"The plaintiff-respondent brought these suits to recover the difference between the freight charges paid by defendants for various shipments of freight over plaintiff's lines and the alleged legal rates which were higher than the rates quoted by the railway agents to the defendants and paid to the railway for transportation.   It is admitted by the railway that it was paid the rates quoted by its agents to the shippers as the legal rates.   The railway company now claims that a new rate had been legally established at the time of the shipments higher than the old and quoted rate, and that under the law the railway is entitled to and must

collect the difference between the rates paid and the new rates contended for.

"The only issue in this case is this: Whether the rates which the railway company contends for in this action were legally established rates. This issue is to be decided by determining, by construction of section 6 of the act to regulate interstate commerce, what acts and steps are necessary to establish a legally effective freight rate under that act. The appellants here admit and concede that, if the rate contended for by the railway was legally established and effective at the times of the shipments in question, it is binding on these shippers, and they are liable to the railway for its payment even though they made the shipments in good faith on the basis of a lower rate quoted to them by the duly authorized agent of the railway, and sold the goods based on those rates; whereas if the proper rate had been quoted they would have sold the goods which were so delivered at a higher price. There is no question as to what was done by the railway company toward establishing the rate contended for. The case, as printed for this appeal, shows that the railway company proved at the trial on Circuit:

"(1) That it filed with the secretary of the interstate commerce commission schedules showing the mileage covered by these shipments, and that the rates contended for by the railway were to apply to such shipments.

"(2) That a copy of these schedules had been filed in the division freight office of the Southern Railway Company at Columbia, S. C.

"(3) That a tin sign had been tacked in a conspicuous place at the stations of the plaintiff company from which these shipments originated and at other stations, one, the Columbia and Greenville branch of the Southern Railway, giving notice that freight schedules applying from this station were on file at Columbia, S. C., in the division freight office.

"There was no proof that copies of these schedules had ever been filed in the offices from which the freight originated or any other freight offices of the Southern Railway Company, or anywhere else. There was no other proof of any promulgation or publishing of rates. The division freight office in Columbia was not an office that received shipments of freight and there was no proof as to how long the signs tacked up at the local offices stayed in place. Upon this proof plaintiff moved for and was granted a directed verdict in its favor on the ground that this testimony showed that the rates contended for by it were legally effective."

The right to make a different contract from the fixed rates is thus stated in *Saunders* v. *A. C. L. R. R. Co.,* 101 S. C. 16, 85 S. E. 168:

"It is settled, too, that under the act of Congress and decisions of the Supreme Court of the United States, construing it, no liability of a carrier can be predicated upon the misrepresentations or mistakes of its agents as to the rates applicable, or privileges or facilities to be afforded under the tariffs filed with the commission. Passengers and shippers are conclusively presumed to know them, as well as the agents of the carriers. This question has been so recently and frequently considered and decided both by the Supreme Court of the United States and by this Court that it is not deemed necessary to state the reasons therefor, or even to cite the decisions."

It is said, however, that the schedules were not posted in the office from which the goods were shipped. This is merely directory, and the failure to comply does not authorize an unlawful rate.

The judgment is affirmed.